UNITED STATES of America,
Plaintiff, Appellant,

v.

ONE PARCEL OF REAL PROPERTY,
etc., Defendant.

Humberto and Idacira Rua,
Claimants, Appellees.

No. 89–2168.

United States Court of Appeals,
First Circuit.

Heard April 3, 1990.
Decided Dec. 20, 1990.

Michael P. Iannotti, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief for the U.S.

Edward J. Romano with whom John F. Cicilline, Providence, R.I., was on brief, for defendant and claimants, appellees.

Before BREYER, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

The United States appeals from a judgment dismissing its *in rem* civil forfeiture complaint for lack of particularity. As the dismissal was at least premature, we vacate the judgment and remand for further proceedings.

## I.

## BACKGROUND

The affidavit attached to the complaint for forfeiture contained the following allegations. Humberto and Idacira Rua ("claimants") entered into a written agreement to purchase a single family residence at 6 Patricia Drive in North Providence, Rhode Island, in March 1986. In August the claimants executed an application for a $65,000 bank loan to fund a portion of the purchase price. Their son, Jaime Rua, was listed as the designated borrower. The bank issued a loan commitment in September and the real estate closing was held on October 3, 1986. Six days later, Jaime Rua sold four and one-half ounces of cocaine to

undercover Providence Police Department Detective Henry Roy, in violation of 21 U.S.C. § 841(a)(1). Jaime was convicted. During the course of the criminal proceedings, Jaime admitted that he had been distributing "ounces and eighths of a kilo of cocaine" since 1983 and that he had been selling "approximately two kilos of cocaine per week to various customers" during the two year period preceding his arrest on December 9, 1987.

The United States filed its first *in rem* civil forfeiture complaint against the defendant real property in March 1989, pursuant to 21 U.S.C. § 881(a)(6) and (d) and Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules"). The complaint alleged that the defendant property, though purchased in claimants' names, "constitute[d] ... proceeds of illegal narcotics transactions" conducted by Jaime Rua. The initial complaint for forfeiture incorporated the first Roy affidavit, reciting the circumstances surrounding claimants' acquisition of title to the defendant real property, as well as Jaime's admissions concerning illicit drug activities.[1]

The district court dismissed the first forfeiture complaint, as follows:

> The net effect of ... facts and gaps in the government's pleading is to leave this Court unable reasonably to infer that the entire premises at 6 Patricia Drive is subject to forfeiture under section 881(a)(6). Rather the information presented supports the reasonable belief that some, if not all, of the interest in the property was derived from the Ruas

earned income or savings. The bare fact that Jaime Rua might have received a large proportion of his income from cocaine sales during the period in which the house was purchased and being paid for does not lead inexorably to the inference that the particular monies that the Ruas used to pay for the property were derived from those sales and not from the Ruas' legitimate income, which the government admits the family earned for a combined total in excess of $37,000 per year.

> Because the facts supplied in the government's complaint in this case are "not narrowly tailored to precisely identify the portion of the property the government can keep," as required by *Pole No. 3172, Hopkinton*, I find that this particular complaint is inadequate to meet Rule E(2) particularity requirements as to the whole property. As required by the First Circuit, this action is dismissed without prejudice for lack of particularity in the complaint. The government is, of course, free to initiate a new action if, upon further consideration, it thinks itself able to marshall the requisite facts sufficient to support a reasonable belief that the entire property is forfeitable.

*United States v. One Parcel of Real Property Known as 6 Patricia Drive*, 705 F.Supp. 710, 720–21 (D.R.I.1989).

On March 28, 1989, the government filed its second complaint for forfeiture, to which was attached a slightly more detailed affidavit by Detective Roy.[2] The claimants

---

**1.** The first Roy affidavit alleged that Detective Roy was a veteran Providence police officer, then serving as a Task Force Agent for the DEA. The affidavit alleged that claimants acquired title to the defendant real property on October 3, 1986, for $90,000. At the real estate closing, there was a $24,261.39 down payment, consisting of $6,261.39 from Jaime, $15,000 from a joint bank account of claimants, and $3,000 from claimant Idacira Rua. The balance was borrowed from the bank, whose records list Jaime Rua as borrower, though the loan application was executed only by claimants. From the time the claimants executed the purchase-sale agreement (March 24) to the closing (October 3), seven deposits totalling $14,554.23 were made to a joint account in claimants' names.

Jaime's financial statement to the lending bank reflects an $18,000 annual income from employment with the Rhode Island Attorney General's Office. Humberto Rua's monthly income from employment was listed as $1,603.00. Idacira Rua was said not to be gainfully employed. The affidavit represented that Jaime "lives at the property and makes the mortgage payments." After the closing, Jaime paid $5,000 in cash for a 1982 Peugeot sedan. Detective Roy attested that the average retail price per kilogram of cocaine during the period in question was between $20,000 and $30,000.

**2.** The second affidavit additionally asserts that Jaime had never been employed in any capacity by the Attorney General's Office, that his em-

moved to dismiss the second complaint for failure to satisfy the particularity requirements of Supplemental Rule E(2)(a). The United States magistrate recommended dismissal.

Further information was added to the affidavit attached to the instant complaint but not enough to satisfy the particularity requirement. Given the fact that the instant complaint is substantially identical to the one dismissed by Judge Pettine, in conjunction with the fact that the government has failed to provide additional requisite facts sufficient to support a reasonable belief that the entire property is forfeitable, I find that the decision dismissing Civil Action No. 88–0444P is also dispositive of the instant complaint. Accordingly, the instant complaint likewise fails to meet the particularity requirement.

The government objected to the magistrate's recommendation. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). The district court accepted the magistrate's recommendation, without further elaboration, and the second complaint for forfeiture was dismissed without prejudice. The government appealed.

---

ployment income amounted to $8,921.86 in 1985 and $7,475 in the first half of 1986, and that he paid $18,600 in cash for a new BMW automobile in March 1987.

3. 21 U.S.C. § 881(a)(6) provides:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . . .

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter....

4. Alternatively, the government may commence a criminal forfeiture proceeding by requesting "the issuance of a warrant authorizing the seizure of property subject to forfeiture under [section 881] in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure." 21 U.S.C. § 881(b) (Supp. 1990). Federal Rule of Criminal Procedure 41

---

## II.

## DISCUSSION

■ All property traceable as proceeds from an illegal exchange of controlled substances is forfeitable to the United States under 21 U.S.C. § 881(a)(6).[3] The first procedural step in an *in rem* civil forfeiture proceeding is the government's request for a warrant to seize the defendant property under Supplemental Rule C(1)(b), as authorized by 21 U.S.C. § 881(b).[4] The second step, and the one implicated on appeal, is the complaint for forfeiture under Supplemental Rule E(2)(a). The third and final predisposition step in a civil forfeiture proceeding under subsection 881(d)[5] is the forfeiture trial itself, at which the government bears the burden of producing enough evidence to "establish probable cause to believe that the defendant property constitutes the proceeds of drug trafficking." *United States v. Parcels of Land*, 903 F.2d 36, 38 (1st Cir.1990).[6]

Civil *in rem* forfeiture complaints in drug cases are governed by Supplemental Rule E(2)(a), *United States v. Pole No.*

---

governs the issuance of search warrants. *See* Fed.R.Crim.P. 41.

5. Subsection 881(d) provides that civil forfeiture proceedings in drug cases are to be conducted in accordance with the procedures used in a judicial forfeiture for violation of the customs laws, codified in Title 19, United States Code, sections 1610, *et seq. See* 21 U.S.C. § 881(d).

6. *See also United States v. $250,000 in United States Currency*, 808 F.2d 895, 897 (1st Cir.1987). "To establish probable cause, the government must only show a 'reasonable ground for belief of [the property's] guilt; supported by less than prima facie proof but more than mere suspicion.'" *Parcels of Land*, 903 F.2d at 38 (quoting *$250,000 in United States Currency*, 808 F.2d at 897). *See also United States v. One 1974 Porsche, 911–S*, 682 F.2d 283, 285 (1st Cir.1982) (Probable cause requires reasonable grounds for believing the property is subject to forfeiture; "[t]he evidence must go further, however, than simply arousing suspicion."); *United States v. Parcels of Real Property etc.*, 913 F.2d 1, 3 (1st Cir.1990) ("In order to satisfy [the probable cause] standard, the evidence must rise above the level of mere suspicion but can be supported by less than *prima facie* proof.").

*3172, Hopkinton*, 852 F.2d 636, 638 (1st Cir.1988), and must meet its particularity requirements.

> In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

Supplemental Rule E(2)(a).

The district court in the present case relied principally on language from our opinion in *Pole No. 3172, Hopkinton, supra,* as support for its determination that the allegations of the first forfeiture complaint lacked the requisite particularity. The district court quoted the statement in *Pole No. 3172, Hopkinton* that the forfeiture complaint must allege " 'facts sufficient to support a belief that the entire property is forfeitable.' " *6 Patricia Drive,* 705 F.Supp. at 715 (quoting *Pole No. 3172, Hopkinton,* 852 F.2d at 639) (emphasis added). Although *Pole No. 3172, Hopkinton* afforded some literal foundation for the district court decision in the present case, the actual holding in *Pole No. 3172, Hopkinton* is more narrowly constrained by its context than the district court acknowledged.

In *Pole No. 3172, Hopkinton,* our attention was centered on a district court judgment declaring an entire defendant property forfeit, *following a jury trial,* notwithstanding the fact that the face of the forfeiture complaint plainly revealed that a substantial portion of the property could not be subject to forfeiture.[7] The posture of the case on appeal exacerbated the problem, as all appellants' claims to the defendant property had been *dismissed.*[8] *Pole No. 3172, Hopkinton,* 852 F.2d at 639. The government nonetheless contended on appeal that the defendant property in *Pole No. 3172, Hopkinton* was "forfeitable in any event because [the record owner] has continued making mortgage payments over periods of time for which there are indications of drug dealing." *Id.* Granting the government's premise, we emphatically rejected its conclusion.

> We do not believe, however, that forfeitability spreads like a disease from one infected mortgage payment to the entire interest in the property acquired prior to the payment. After all, only the actual proceeds of drug transactions are forfeitable. Unless section 881(a)(6) deprives persons accused of dealing drugs of the right to own any property, the existence of an undivided interest in a felon's property which constitutes proceeds cannot mean that his entire property is proceeds.

*Id.,* 852 F.2d at 639–40.

Thus, *Pole No. 3172, Hopkinton,* unlike the present appeal, dealt with a *post-trial* contention that an entire defendant property may be declared forfeit even though it is plain from the complaint and the evidence that a substantial portion of the property was acquired with *untainted* assets. The present appeal poses the very different question whether the district court may dismiss a forfeiture complaint on

---

7. It was undisputed in *Pole No. 3172, Hopkinton* that at least 20.8% of the defendant property had been acquired by the claimants more than two years prior to any alleged drug dealings and two years before the enactment of the forfeiture statute. *See* 21 U.S.C. § 881(a)(6), enacted as § 301(a) of the Psychotropic Substances Act, Pub.L. 95–633, 92 Stat. 3777 (1978). Moreover, the government did not allege receipt of any drug profits by claimants until five years after they acquired the defendant property. Finally, the government did not even contend that funds which other persons contributed toward the acquisition of the defendant property constituted drug proceeds. Thus, viewed in its best light, not only the complaint for forfeiture, but the entire record, in *Pole No. 3172, Hopkinton,* demonstrated that the forfeiture claim to a substantial portion of the defendant property was unsustainable.

8. It is noteworthy that the present appeal challenges the dismissal of a forfeiture complaint *before* trial, whereas *Pole No. 3172, Hopkinton* presented a challenge to the sufficiency of a forfeiture complaint after a jury had found that two of the claimants (a third claim, filed in behalf of the record owner, was erroneously dismissed on alternative grounds: as a Rule 37 sanction and pursuant to the fugitive from justice doctrine) had no ownership interest in the property. *See Pole No. 3172, Hopkinton,* 852 F.2d at 638, 641.

the ground that its allegations *fail to foreclose, prior to trial*, that a portion of the defendant property was acquired with untainted assets. *See 6 Patricia Drive*, 705 F.Supp. at 720.

 We reiterate our earlier rejection of the view that an entire defendant property is insulated from civil forfeiture merely because some of the purchase monies may have been untainted.[9] The Supplemental Rule E(2)(a) particularity requirement is designed to assure that the forfeiture complaint apprises potential claimants of the circumstances which support the government's contention that there is probable cause to believe that the defendant property was *connected with* illegal drug activity, *see Parcels of Real Property etc.*, 913 F.2d at 1, 3; *United States v. $250,000 in United States Currency*, 808 F.2d 895, 897 (1st Cir.1987); *see also United States v. Thomas*, 913 F.2d 1111, 1114 (4th Cir. 1990) (at trial, government must evidence "substantial connection" between defendant property and illegal drug activity); *United States v. One 1980 Rolls Royce*, 905 F.2d 89 (5th Cir.1990) (same); *United States v. Single Family Residence & Real Property*, 803 F.2d 625 (11th Cir.1986) (same), thus enabling claimants " 'to commence an investigation of the facts and to frame a responsive pleading,' " *Pole No. 3172, Hopkinton*, 852 F.2d at 638 (quoting Supplemental Rule E(2)(a)).

 Once the government presents enough evidence at trial to establish probable cause to believe that the defendant property is *connected with* illegal drug activity, the burden shifts to the claimant to establish that some or all of the property is not traceable as proceeds from an illegal exchange of controlled substances, hence not subject to forfeiture. *United States v. Parcel of Land & Residence at 28 Emery St.*, 914 F.2d 1, 3 (1st Cir.1990); *Parcels of*

Land, 903 F.2d at 38; *United States v. Parcel of Land*, 896 F.2d 605, 606 (1st Cir.1990). Whether none, all, or only a portion of the defendant property is forfeitable is not determined at the pleadings stage, but at trial. *Pole No. 3172, Hopkinton*, 852 F.2d at 640 ("at the pleadings stage, the government must allege facts from which one could infer that the payments claimed to be proceeds actually were tainted; the fact finder can then later determine the percentage interest acquired as a result of tainted payments.") (footnote omitted). *See also One 1980 Rolls Royce*, 905 F.2d at 92.

In *Pole No. 3172, Hopkinton*, we concluded that the complaint for forfeiture did not contain sufficiently particular allegations to connect the entire defendant property to tainted proceeds from illegal drug activity. While we recognize, as previously stated, that the quoted language from *Pole No. 3172, Hopkinton*, 852 F.2d at 639, *viz.*, "facts sufficient to support a belief that the entire property is forfeitable," offers superficial literal support for the district court decision in the present case, the holding in *Pole No. 3172, Hopkinton* was not nearly so broad. There the court held only that the particularity requirement imposed by Supplemental Rule E(2)(a) had not been met for the entire defendant property. Viewed in context, the intendment of the language which the district court quoted from *Pole No. 3172, Hopkinton* is simply that an entire defendant property is not forfeitable on a mere showing that there is probable cause to believe that a portion of the property is traceable as proceeds from an exchange of controlled substances. Insofar as the district court's literal interpretation of the quoted language did not take account of its context, it misapprehended the holding in *Pole No. 3172, Hopkinton*.

---

9. As we stated in *Pole No. 3172, Hopkinton*, 852 F.2d at 640:

> It appears, therefore, that the government may have an interest equal only to the portion of the property acquired by Fogarty as a result of mortgage payments (if, of course, the government can demonstrate probable cause to believe those payments were made with

> proceeds of drug transactions). *In consequence, at the pleadings stage, the government must allege facts from which one could infer that the payments claimed to be proceeds actually were tainted; the fact finder can then later determine the percentage interest acquired as a result of tainted payments.*
> (footnote omitted) (emphasis added).

■ The district court erred not only in its analysis of the particularity requirement but also in suggesting that the government must meet a more exacting standard of proof at the complaint stage than is required at trial. The court concluded that the forfeiture complaint must allege facts "that support a reasonable belief that specific property is tainted and therefore forfeitable." *See 6 Patricia Dr.*, 705 F.Supp. at 717. It is well settled, however, that the complaint need not allege facts sufficient to support a "reasonable belief that specific property is tainted," but facts sufficient to support "a reasonable belief that the government could demonstrate *probable cause*" for finding the property tainted. *Pole No. 3172, Hopkinton*, 852 F.2d at 640 (emphasis added). The district court erroneously dismissed the second forfeiture complaint on the ground that its allegations do "not *inexorably* lead to the inference that the particular monies that the Ruas used to pay for the property were derived from [illegal drug sales] and not from the Ruas' legitimate income." *6 Patricia Drive*, 705 F.Supp. at 720 (emphasis added). Thus, it imposed a standard of proof verging on proof beyond a reasonable doubt.

■ There can be no doubt that the forfeiture complaint in the instant case is sufficient. The second Roy affidavit, expressly made part of the second forfeiture complaint,[10] alleges facts sufficient to support a reasonable belief that the government, at trial, can make a probable cause showing that most, if not all, of the defendant property is connected to illegal drug proceeds.

We approach the forfeitability determination with a view to the "aggregate of facts," according due account to "common experience considerations." *$250,000 in United States Currency*, 808 F.2d at 899. Reason and common sense compel the conclusion that the "aggregate of facts" alleged in the second Roy affidavit were sufficient to establish, at the very least, a reasonable belief that the government could demonstrate probable cause that the down payment and mortgage payments on the defendant property were traceable, for the most part if not entirely, to illegal drug proceeds. *Compare United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1434–35 (9th Cir.1985) (finding probable cause where drug trafficker, although not nominal purchaser, nonetheless was involved in negotiations for purchase of defendant houseboat, test-operated the houseboat, and made initial cash payment of $13,500; nominal owner had little verifiable income in years immediately prior to purchase, and large sums of cash were deposited in its account during four month period preceding purchase).

We do not believe it requires a leap of faith to infer that the bulk of Jaime Rua's cash flow, during the two-year period preceding his arrest on December 9, 1987, probably came from admitted cocaine sales, on a weekly basis, averaging approximately two kilograms and generating from $40,000 to $60,000. Since the defendant property was acquired in October, 1986, it seems entirely reasonable to infer that the apparent shortfall in claimants' and/or Jaime Rua's legitimate cash flow was traceable to Jaime's cocaine dealings.

The attached affidavit attests that Jaime Rua admitted to large scale cocaine sales on a weekly basis beginning long before and extending well beyond the time claimants acquired title to the defendant property. The affidavit states that Jaime made the initial overture to the realtor; that the loan application and all real estate documents were executed only by the claimants, though Jaime was listed as the designated borrower; that title was transferred

---

10. The court in *Pole No. 3172, Hopkinton*, expressed concern that the step-one affidavit, accompanying the request for a warrant to seize the defendant property, was neither expressly incorporated by, nor attached to, the forfeiture complaint. Courts may consider attached affidavits incorporated into the forfeiture complaint. *See Parcels of Land*, 903 F.2d at 48 ("Whether the facts are contained in the complaint itself or in the attached affidavit would seem irrelevant to this inquiry [but] [w]e might decide differently if the affidavit were not attached to the complaint.") *See also United States v. Premises & Real Property at 4492 South Livonia Rd.*, 889 F.2d 1258, 1266 (2d Cir.1989) (incorporated affidavit "adequately apprised [claimants] of the factual circumstances underlying the forfeiture action.").

to claimants only; that Jaime paid $23,600 in cash for two automobiles during late 1986 and early 1987, notwithstanding total legitimate gross earnings in 1985 and the first half of 1986 in the amount of $16,396; that his claim of employment with the Attorney General's Office was false; that he thus inflated his legitimate earned income; that he directly contributed at least $6,261.39 to the down payment for the defendant property; that he resided at the defendant property and made mortgage payments after the real estate closing. The affidavit asserts specific facts from which it reasonably can be inferred that there is probable cause to believe that Jaime Rua lacked sufficient legitimate income with which to make the cash expenditures related in the Roy affidavits; that claimant Idacira Rua had no income; that claimant Humberto Rua's earned income was not sufficient to enable claimants to fund the down payment or to obtain purchase money financing for the defendant property; that seven large deposits were made into claimants' joint account during the six months immediately preceding their acquisition of title to the defendant property; and that these seven deposits approximated the total amount disbursed from their joint account at the time of the real estate closing.

■ The possibility that either Jaime Rua or the claimants, or all three, may have had sufficient untainted assets with which to purchase the entire defendant property did not warrant dismissal of the complaint for insufficient particularity. Even at the trial stage, "[t]he government's evidence need not exclude other plausible hypotheses of the source of the money." *$250,000 in United States Currency*, 808 F.2d at 899. Therefore, we cannot posit a more stringent standard at the pretrial stage. Similarly, the possibility that some portion of the purchase monies may have been untainted does not mean that the complaint is insufficient, but may merely delimit the portion of the defendant property found forfeitable at trial. The commingling of legitimate and illegitimate funds in a defendant property does not derail a forfeiture proceeding at the complaint stage. *See One 1980 Rolls Royce*, 905 F.2d at 89. Rather, at trial, claimants may show that some or all of the defendant property does not constitute illegal drug proceeds. "[T]he fact finder can then later determine the percentage interest acquired as a result of the tainted payments," *Pole No. 3172, Hopkinton*, 852 F.2d at 640. *See also One 1980 Rolls Royce*, 905 F.2d at 92 ("the determination of the respective interests of the government and the claimant to the cash proceeds that result[ ] from the sale of forfeited assets" is for the district court).

## III

### CONCLUSION

■ As the government need not exclude all other plausible hypotheses, even at trial, *$250,000 in United States Currency*, 808 F.2d at 899, it cannot be held to a more stringent standard of proof at the complaint stage. Rather, the particularity requirement under Supplemental Rule E(2)(a) assures that the forfeiture complaint will apprise potential claimants of sufficient factual particulars to support a reasonable belief, *Pole No. 3172, Hopkinton*, 852 F.2d at 640, that the government, at trial, can demonstrate probable cause that the defendant property is traceable as proceeds from an exchange of controlled substances, *see Parcels of Real Property etc.*, 913 F.2d at 1, 3; *$250,000 in United States Currency*, 808 F.2d at 897, thereby enabling claimants " 'to commence an investigation of the facts and to frame a responsive pleading,' " *Pole No. 3172, Hopkinton*, 852 F.2d at 638 (quoting Supplemental Rule E(2)(a)).

*The judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.*