Rabun Jones, Dyer, Dyer, Dyer & Jones, George Hollowell, Jr., Greenville, Miss., for defendants-appellants.

Jim M. Greenlee, Paul D. Roberts, Asst. U.S. Attys., Robert O. Whitwell, U.S. Atty., John R. Hailman, Asst. U.S. Atty., Oxford, Miss., for plaintiff-appellee.

## UNITED STATES of America, Plaintiff–Appellee,

v.

**ONE 1980 ROLLS ROYCE, VIN # SRL 39955, One 1984 Mercedes Benz, VIN # 1237200037, and the Premises Known as Lot 4, Cypress Acres, Washington County, Mississippi, Defendants–Appellants,**

and

**Frederick Dotson, Claimant–Appellant.**

No. 89–4335.

United States Court of Appeals, Fifth Circuit.

July 10, 1990.

Before CLARK, Chief Judge, THORNBERRY, and JONES, Circuit Judges.

THORNBERRY, Circuit Judge:

Claimant Frederick Dotson appeals the district court's grant of summary judgment in favor of the United States permitting forfeiture of three properties that claimant purchased in part with money from drug transactions. Because legitimate funds were also used to purchase the properties, we hold that summary judgment permitting complete forfeiture of the properties was erroneous, and thus we reverse and remand.

### Facts and Procedural History

The defendant properties in this action are a 1980 Rolls Royce, a 1984 Mercedes Benz, and a parcel of land. Claimant purchased these properties in 1984 at a total cost of $117,000. Claimant produced evidence of legitimate income and savings totaling $102,470 during that year. Thus, claimant had a shortfall of approximately $15,000, not including living expenses.

Claimant admits that in 1984 he was a drug dealer and that the remaining $15,000 needed to purchase the properties was drug money.

Although for purposes of summary judgment the district court did not dispute the above figures, it held that because claimant used drug money to purchase each of the properties,[1] they are completely forfeitable under 21 U.S.C. § 881(a)(6). Thus, the court granted summary judgment in favor of the United States. The primary issue before us is whether section 881(a)(6) provides for the complete forfeiture of properties even though they were purchased in part with legitimate funds. We hold that such an interpretation is erroneous, and accordingly reverse and remand for a trial to allow claimant to avoid forfeiture to the extent that he can prove what portions of the properties were purchased with legitimate funds.

### Discussion

Section 881(a)(6) provides for the forfeiture of "[a]ll moneys, negotiable interests, securities, or other things of value ... furnished by any person in exchange for a controlled substance in violation of this subchapter, [and] all proceeds traceable to such an exchange...." 21 U.S.C. § 881(a)(6). As an admitted drug dealer, claimant never disputed that the government met its initial burden of demonstrating "probable cause for belief that a substantial connection exists between the property to be forfeited and a crime under Title 21 of the United States Code." *United States v. $64,000.00 in U.S. Currency*, 722 F.2d 239, 244 (5th Cir.1984). Thus, the burden of proof shifts to claimant to prove by a preponderance of the evidence that the money used to purchase the properties in question came from an independent, non-drug-related source. *United States v. One 1986 Nissan Maxima GL*, 895 F.2d 1063, 1065 (5th Cir.1990).

Although the district court found and the government does not dispute that legitimate funds went into each of the properties, the government argues that if one dollar of drug money was used to purchase an asset, the entire asset is forfeitable. Claimant contends that the legitimate portions of the properties are not subject to forfeiture. We agree with the claimant.

In *United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636 (1st Cir.1988), the First Circuit dismissed the government's complaint seeking forfeiture of the entire interest in real property on the grounds that the claimant made some mortgage payments with drug money. The court noted that the very earliest indication of involvement with drugs occurred two years after the purchase of the property, and that the property was purchased with a downpayment constituting 20.8% of its value. "Since that 20.8% interest was acquired two years before the earliest indication of drug activity there is absolutely no reason to believe it is forfeitable." *Id.* at 639.

The court also rejected the argument that the entire property was nevertheless forfeitable because mortgage payments were made with drug money:

> We agree that the interest acquired as a result of mortgage payments made with the proceeds of drug transactions should be forfeitable. We do not believe, however, that forfeitability spreads like a disease from one infected mortgage payment to the entire interest in the property acquired prior to the payment. After all, only the actual proceeds of drug transactions are forfeitable. Unless section 881(a)(6) deprives persons accused of dealing drugs of the right to own any property, the existence of an undivided interest in a felon's property which constitutes proceeds cannot mean that his entire property is proceeds.

*Id.* at 639–40. *See United States v. Certain Real Property Located at 2323 Charms Rd.*, 726 F.Supp. 164, 169–70 (E.D. Mi.1989) (disallowing forfeiture of all of claimant's personalty where claimant had a

---

1. Claimant objects that while drug money went towards the purchase of the Rolls Royce and the land, only legitimate funds were used to purchase the Mercedes, and it is thus not subject to forfeiture. Because we remand for a full trial, we leave this issue to the factfinder.

legitimate part-time occupation, and complaint failed to specifically allege how some items of personalty were acquired with drug funds); *United States v. Property Known as 6 Patricia Dr.,* 705 F.Supp. 710, 719–20 (D.R.I.1989) (disallowing complete forfeiture of real property titled in name of claimant's parents where claimant and his family earned in excess of $37,000 in legitimate income per year, and government failed to identify which portions were subject to forfeiture); *see also United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1161 n. 9 (2d Cir.1986) (noting in dicta that "if $100 from the sale of drugs is deposited in an account funded with untainted money, $100 in the account and each $100 withdrawal are all vulnerable to forfeiture, but the Government can obtain only a single forfeiture of $100"); D. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 4.03[4][a] at 17 (Supp. Jan. 1990) ("If part of a piece of property is 'proceeds' under section 881(a)(6) and part of the property was acquired with clean money, only that portion which constitutes proceeds is subject to forfeiture.").

Those cases allowing the complete forfeiture of the claimant's properties have relied on the fact that the claimant had no apparent sources of legitimate income. *See 6 Patricia Dr.,* 705 F.Supp. at 720 n. 15 (citing cases). But where there are legitimate sources of income, this "net-worth theory" is inappropriate. As one commentator has noted:

A problem of proof arises where the government makes the mistake of trying to forfeit literally everything owned by the drug trafficker, including a great many items of small value. If the trafficker can show any non-drug income, fairness dictates that he ought to be able to keep a portion of his total assets corresponding to the proportion his non-drug income bears to his drug-derived income.

D. Smith, *supra,* ¶ 4.03[4][e] at 4–51. Other cases permitting complete forfeiture of the claimant's properties rely on different provisions or theories. For example, the government may seek forfeiture of property used to facilitate drug trafficking, even if only a small amount of drugs was involved. *See* 21 U.S.C. §§ 881(a)(4), (6)–(7).

The government's cases are distinguishable. In *United States v. Premises Known as 3639–2nd St., N.E.,* 869 F.2d 1093, 1097 (8th Cir.1989), the court permitted the forfeiture of the entire $12,585 found in a drug trafficker's coat pocket even though only $250 of the money was "buy money" utilized in an undercover purchase of cocaine. But there the court noted that "[t]he evidence of drugs, handguns, and drug paraphernalia linking the currency to illegal drug activity, as well as the irregularity of storing over $12,000 in one's coat pocket, results in sufficient probable cause to find that the entire $12,585 is subject to forfeiture." *Id.* In other words, there was simply no credible evidence that the currency in his coat pocket was derived from legitimate sources, especially in light of the strong circumstantial evidence that the currency was drug money.

In *United States v. Real Estate Located at 116 Villa Rella Dr.,* 675 F.Supp. 645 (S.D.Fla.1987), the court permitted forfeiture of the entire real property of the claimants. Claimants' property was the last link in a series of transactions traceable to the drug money of certain drug traffickers. The traffickers had used drug money to purchase real property, then transferred this property to claimants for no consideration. Claimants sold the property and used the proceeds to buy the defendant property. The court rejected the argument that only the original amount of drug money was forfeitable. Rather, any increase in property value was also forfeitable, since it resulted from the use of drug money. *Id.* at 645–46. We agree that any profits, appreciation, or income from drug money proceeds is forfeitable—profits from tainted proceeds are still tainted. *See* D. Smith, *supra,* ¶ 4.03[4][b]. But such a case is not before us. Dotson is only seeking to recover the legitimate portions of his properties, not the profits from his illegitimate properties.

## Conclusion

In summary, we conclude that a court should not grant summary judgment and

permit the complete forfeiture of all properties when there is evidence that the properties were purchased at least in part with legitimate funds. Though the burden will be on the claimant Dotson, he should be permitted to establish what portions of the properties were purchased with legitimate funds. We leave to the district court the determination of the respective interests of the government and the claimant to the cash proceeds that resulted from the sale of the forfeited assets. Accordingly, the case is REVERSED and REMANDED for further proceedings consistent with this opinion.